WILLIAM McKIM
AND
HASLETT McKIM
vs.
WILLIAM MASON
AND
THE WHITE HALL CO.

} DECEMBER TERM, 1849.

[PRACTICE—PLEADINGS—USURY—MORTGAGE TO SECURE A FORFEIT.]

Joining issue upon an answer, must be regarded as a waiver of any mere technical objection to the form in which the defences in such answer are presented.

Pleadings in Chancery should consist of averments or allegations of fact, and not of inference and argument.

The defence of usury may either be set up by plea, or relied upon in the answer.

The *statute* against usury must be pleaded, or relied upon in the answer, and it will not do to state circumstances which may lead the opposite party to infer that he is to meet that defence—this view is supported by the 1st section of the act of 1845, ch. 352.

The consideration of the mortgage which the complainants sought to enforce, was a forfeit, which the mortgagor agreed to pay them in the event of his failing, or neglecting to appoint the complainants his agents, as provided in a certain agreement. HELD—

That this mortgage could not be enforced by this court—the rule being a universal one, that courts of equity will not lend their aid to enforce a penalty, or forfeiture, but will leave the parties to their remedy at law.

It may be laid down as a fundamental doctrine, that equity does not *assist* the recovery of a penalty, or forfeiture, or anything in the nature of a forfeiture.

[The bill in this case was filed on the equity side of Baltimore County Court, on the 5th of September, 1849, by the complainants, for the sale of a certain cotton factory, and other real estate, mortgaged by the defendant, Mason, to the complainants, by two deeds of mortgage : the first dated the 29th of September, 1848, professes to secure the sum of $22,499 33, which the mortgagor owed the complainants, and for which, with the interest thereon, he passed the several promissory notes recited in said mortgage. The second, dated the 9th of October, 1848, professes to secure the sum of $6,000, also owing by the mortgagor to the complainants, and for which he

had passed his several notes therein recited. The mortgagor covenanted to pay the state and city taxes on each of these mortgage debts, and the insurance upon the property secured by them. The bill then alleges the failure of the mortgagor to pay, according to the terms of the mortgages, and states that the defendant, Mason, on the 11th of March, 1847, assigned his equity of redemption, in the property thus mortgaged, to the defendants, the White Hall Company, by deed of that date. It then prays for a sale of the land, &c.

The answer of Mason admits the. execution of the mortgages, as charged in the bill, and the assignment of his equity of redemption to the White Hall Company, and then prays to be dismissed, &c.

The answer of the White Hall Company was filed on the 6th of November, 1849 ; and, after admitting the execution of the first mortgage, but requiring strict proof of the amount due thereon, proceeds as follows : "As to the second mortgage mentioned in the said bill of complaint, as having been executed on the 9th of October, 1848, this respondent admits the execution by the said Mason, of the said last mentioned mortgage, and of the promissory notes intended to be secured thereby ; but this respondent denies that the said complainants, or either of them, or any one on their behalf, ever loaned, or paid to the said Mason, or to any one on his behalf, any part of the money mentioned in said second mortgage, and intended to be secured thereby, but, on the contrary, this respondent charges and avers, that the sum of $6,000, and the interest thereon, was reserved and demanded by the aforesaid complainants, of the said Mason, as additional compensation to them for loans of money, made by them, to the said Mason, upon which said loans, they were also to receive the full amount of interest allowed by law in the State of Maryland, and that the whole amount legally due to the complainants, upon both the aforesaid two mortgages, is fully covered by the first mortgage hereinbefore mentioned, if even that sum be due, and that the said complainants paid no legal consideration for said second mortgage, and that they are not entitled to receive the

amount thereof, nor the insurance and taxes which they may have paid thereupon.''

The testimony taken under the commission, is sufficiently stated in the opinion. The cause was removed, at the suggestion of the complainants, to this court, and argued upon notes by the several counsel of the parties.]

THE CHANCELLOR:

This case being submitted for a decree, upon the agreement of the parties, the written arguments of their solicitors have been read, and the proceedings carefully considered.

The right of the complainants to a decree upon their mortgage, dated the 29th of September, 1848, is not contested, and, therefore, so far as the debt secured by that mortgage is concerned, no question is made; and the case is supposed to be equally free from difficulty, with respect to the claim for moneys paid by the complainants for taxes and insurance, against which the complainants, by the covenants of that mortgage, were to be indemnified.

The controversy arises upon the second mortgage, executed by the same party, to the complainants, on the same property, on the 9th of October following, to secure the principal sum of $6,000, and the interest thereon, at the periods, in that behalf, therein limited. The answer of Mason, the mortgagor, admits the execution of the mortgages, and sets up no defence, but the White Hall Company, to whom Mason assigned his equity of redemption on the 15th of March, 1849, by deed of that date, whilst it admits the execution of the last mortgage, denies, by its answer, that the complainants paid any consideration whatever therefor, and charges, that the said sum of $6,000, and the interest thereon proposed to be thereby secured, was reserved and demanded by the complainants, of the mortgagor, Mason, ''as additional compensation to them, for loans of money made by them to said Mason, upon which loans they were also to receive the full amount of interest allowed by law in the State of Maryland, and that the whole amount legally due to the complainants, upon both the aforesaid two mort-

gages, is fully covered by the first mortgage, if even that sum be due, and that said complainants paid no legal consideration for said second mortgage, and that they are not entitled to receive the amount thereof," &c. Much of the argument of the solicitors has been directed to the question, whether this answer of the White Hall Company does properly set up the defence of usury, as against the last mortgage ; and, notwithstanding issue has been joined upon the answers, which must be regarded as a waiver of any mere technical objection to the form in which the defence is presented, I am of opinion, that this answer cannot be considered as relying upon usury. There can be no doubt that usury may be pleaded or relied upon in the answer ; and this is not disputed, but still, as was said in *Hood* vs. *Inman*, 4 *Johns. Ch. Rep.*, 437, and the principle received the sanction of the Court of Appeals, in *Chambers* vs. *Chalmers et al.*, 4 *Gill and Johns.*, 420, "pleadings in chancery should consist of averments or allegations of fact, and not of inference and argument." But in this answer, the respondent, though he states that the debt, secured by the second mortgage, was additional compensation for the use of money, the principal and interest upon which was already secured ; and although, from this statement, it might be inferred that the mortgage was to be impeached for usury, the complainants are not, by positive averment, notified of that defence, I am of opinion, that the *statute* against excessive usury, must be pleaded or relied upon in the answer, and that it will not do to state circumstances which may lead the opposite party to infer that he is to meet that defence. In the case of *Chambers* vs. *Chalmers*, already referred to, the court say, that "unless the bill itself states a case so clearly usurious, that no inference or intendment can help it, then, perhaps, the court would, at the hearing, dismiss it, no matter what might be the defence." "The *statute* against usury must always be pleaded, or relied upon in the answer, and for the same reason, that requires pleading of the statute of limitations." And the 1st section of the act of 1845, ch. 352, is in manifest conformity with this view, and would seem to leave no doubt upon the subject.

It is not insisted, by the defendant's counsel, that the usury which he charges against the second mortgage, fastens itself to, and infects the prior one. The latter is conceded to be a valid security, and the objection to the mortgage last executed, is, that it is wholly void, because given without any legal consideration to support it.

It appears, by an agreement between the plaintiff and Mason, executed on the 23d of September, 1846, that the latter agreed to constitute the plaintiffs his agents, for the term of two years, for the sale of cotton sail duck, to be manufactured at the factory, then about to be put in operation, and for their services so to be rendered, and in lieu of all other compensation, or commissions, Mason agreed to pay them the sum of $3,000 per annum. And it was further stipulated, in consideration of the terms and conditions in the said agreement contained, to be performed on the part of the complainants, that if he, Mason, from any cause, should neglect, or fail to appoint, and put in possession of the said agency, the said complainants, that then, and in that case, he should forfeit, and pay to them, the sum of $6,000, in equal quarterly payments, until the whole shall be paid, commencing from the 1st day of March next, so that they shall receive the same consideration as if they had acted as agents."

And it is in evidence, brought out by the cross examination of Henry A. Barling, a witness produced by the complainants, that the notes mentioned in, and secured by the second mortgage, were given for commissions, which were to be paid to the complainants, in default of Mason's placing in their hands certain goods, manufactured by him, for sale at the factory.

The same witness proved, in the examination in chief, that Mason sent the complainants no goods, because they were not in their line of business, and that consignments of them were made to other persons for sale, and he likewise proved, that the notes spoken of by him upon the cross examination, were given in pursuance of the agreement of the 23d of September, 1846, already spoken of.

It seems, therefore, to be quite apparent, from the proof of his witness, that no valuable consideration was paid by the

complainants for the notes attempted to be secured by the second mortgage, but that they were given in fulfilment of the stipulation for the forfeiture of the sum of $6,000, mentioned as the forfeit in the agreement of September, 1846. It has been urged by the counsel for the defendant, that as the Messrs. McKim were engaged in business, which unfitted them for acting as agents for the sale of the articles made at this factory, the stipulation under which the notes were given, was a mere cloak to cover the usury, and it cannot be denied that there is much weight in the suggestion, but as the first mortgage, which, in that view of the case, would come within the scope of the objection, is not assailed, and as in any event, the amount really due must be paid ; and as, in my opinion, the defence of usury is not properly interposed, even as respects the second mortgage, I do not deem it necessary to consider this question, but shall very briefly inquire into the right of the complainants to a decree upon their last mortgage in opposition to the objection, that it is wholly destitute of consideration, legal or equitable, and was given to secure a forfeit.

It is admitted by the complainant's counsel, in his argument, that this mortgage was given in pursuance of the agreement of September, 1846, and its validity is maintained upon the ground that, as Mason had deprived them of the benefit of the agency, they were justly entitled to the amount, in the event, stipulated to be paid them. "That an obligation so founded, upon good consideration, and afterwards acknowledged by Mason, can no more be disturbed by his assignee, than it could by himself." It will be recollected, however, that the mortgagees are the complainants, asking to have this instrument enforced, and if the court is satisfied that it does not rest upon a good foundation, but that, on the contrary, it is without such a consideration as should commend it to the favor of a court of equity, it is its duty to refuse its aid to enforce it. The sum of $6,000, and the other sums mentioned in the mortgage of October, 1848, is the forfeit which Mason agreed to pay in the event that he failed, or neglected to appoint the complainants his agents, as provided for in the agreement, and thus regarded,

the authorities are express, that they have no claim to the aid of the court, the rule being a universal one, that courts of equity will not lend their aid to enforce a penalty, or forfeiture, but will leave the parties to their remedy at law. *Story's Equity Pl.*, section 521 ; 2 *Story's Com. on Eq.*, section 1319 ; *Livingston* vs. *Tompkins*, 4 *Johns. Ch. Rep.*, 415. In this case, Mr. Chancellor Kent said, "It may be laid down as a fundamental doctrine of this court, that equity does not assist the recovery of a penalty or forfeiture, or any thing in the nature of a forfeiture."

I cannot bring myself to think, that the power of this court can be successfully invoked in this case, because of the execution of the mortgage. That circumstance does not take from the claim the character of a forfeiture, against the enforcement of which, the court always turns its face.

I will, therefore, sign a decree, in the usual form, for a sale of the mortgaged premises, to pay the claims founded upon the first mortgage, but in my opinion, the residue of the proceeds of sale, will not be applicable to the payment of the second.

J. MASON CAMPBELL for Complainants.
ST. G. W. TEACKLE for Defendants.